Lina Kaisey (SBN 314322)
KAISEY LAW PC
100 Wilshire Blvd. Suite 700
Santa Monica, CA 90401
Telephone: (858) 774-0819
Email: lina@kaiseylaw.com

Attorney for Plaintiff
DOUGLAS ABDIEL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| DOUGLAS ABDIEL,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company; ALPHABET INC., a Delaware corporation; and GOOGLE AUSTRALIA PTY LTD,<br><br>Defendants. | Case No. __________________<br><br>**COMPLAINT FOR:**<br>1. Discrimination and Retaliation in Violation of USERRA (38 U.S.C. § 4311);<br>2. Retaliation in Violation of the False Claims Act (31 U.S.C. § 3730(h));<br>3. Violation of the Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502); and<br>4. Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Douglas Abdiel ("Plaintiff"), by and through undersigned counsel, brings this action against Alphabet Inc., Google LLC, Google Australia Pty Ltd (collectively, the "Defendant" or "Defendants"). Plaintiff alleges matters concerning his own acts and experiences based on personal knowledge and alleges other matters upon information and belief following a reasonable investigation, as follows:

## INTRODUCTION

1. Plaintiff Douglas Abdiel is a decorated officer of the United States Marine Corps who served his country for more than a decade, including two combat deployments, before Google recruited him through its own veterans-outreach program. For roughly ten years he was, by Google's own repeated assessments, an exceptional employee. Google was glad to trade on his military standing, knowledge, and contacts when doing so advanced Google's interests—and, at the same time, denied him the employment protections and benefits that federal law guarantees to those who serve.

2. This action arises from related courses of misconduct. First, Google discriminated against Plaintiff because of his uniformed service. While Google paid the reservists it employed in the United States for their reserve duty, it denied Plaintiff that benefit because he was employed through its Australian subsidiary, and it confined him to limited roles and denied him promotions in order to accommodate his reserve service requirements. Furthermore, in 2023 Google obtained, copied, and used beyond the scope of authorization, Plaintiff's sensitive private data, including a spreadsheet of his military reserve activity and a military meeting agenda that Plaintiff had kept only on a separate, private account he never connected to or shared with Google—and disclosed that data to non-U.S. and non-Australian nationals. When Plaintiff reported that Google's handling of United States government data was unlawful and endangered him, his family, and potentially

national security, Google retaliated: it opened a second, pretextual investigation, placed him on punitive "administrative leave," denied him his annual bonus for the first time in his career, and ended his employment.

3. In response to the data breach, Google's failure to remedy the breach, and Plaintiff's concerns for his and his family's safety, Plaintiff has been forced to take remedial measures including, but not limited to, wiping his devices, monitoring attacks on his family's at-home internet services, and more. The harm is ongoing. Google has never explained how it obtained the documents, and has refused across years to identify or expunge the copies of Plaintiff's data it retains. Due to the pervasive nature of Google products, Plaintiff is required to maintain both a personal and professional Google account. Plaintiff's privacy continues to be invaded to this day.

4. Plaintiff brings claims under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq. ("USERRA"); the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h); the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 ("CDAFA"); and California's Unfair Competition Law, California Business and Professions Code § 17200 et seq. ("UCL").

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over Plaintiff's First and Second Causes of Action under 28 U.S.C. § 1331 because they arise under the laws of the United States. Jurisdiction over the USERRA claim is further conferred by 38 U.S.C. § 4323(b)(3), and jurisdiction over the False Claims Act retaliation claim is conferred by 31 U.S.C. § 3730(h) together with 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiff's Third and Fourth Causes of Action under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that

they form part of the same case or controversy under Article III of the United States Constitution and arise from a common nucleus of operative fact.

7. This Court has personal jurisdiction over Defendants Google LLC and Alphabet Inc. because each maintains its principal place of business in Mountain View, Santa Clara County, California; because the decisions that directed the conduct at issue were made by Google personnel located at Google's headquarters in Mountain View, California; and because the computer systems, servers, programs, and data-handling architecture that carried out the conduct complained of were designed, controlled, and operated from California. This Court has personal jurisdiction over Defendant Google Australia Pty Ltd because it acted as the agent of, and in an integrated enterprise with, the California-based Defendants, at the direction of decision-makers in California, and purposefully directed conduct at and concerning an individual who at the time of the relevant conduct paid taxes, owned a home, and voted in California, giving rise to the claims alleged.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants Google LLC and Alphabet Inc. reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims — including the design, control, and operation of the systems that accessed, copied, and disseminated Plaintiff's data, and the decisions of the Mountain View–based personnel who directed the investigation and the conduct at issue — occurred in this District. Venue is further proper under 38 U.S.C. § 4323(c)(2) because Defendants maintain a place of business in this District. For purposes of the CDAFA claim, California Penal Code § 502(j) provides that a person who causes the access of a computer, computer system, or computer network in one jurisdiction from another is deemed to have personally accessed it in each jurisdiction; Defendants caused the access, copying, and use complained of from and through computers, systems, and networks located in California.

## DIVISION ASSIGNMENT

9. Pursuant to Civil Local Rules 3-2(c) and (e), this action arises in Santa Clara County, where Defendants Google LLC and Alphabet Inc. are headquartered, where the personnel who directed the conduct at issue are located, and where a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and is therefore properly assigned to the San Jose Division of this Court.

## PARTIES

10. Plaintiff Douglas Abdiel is a citizen of the United States and a Lieutenant Colonel in the United States Marine Corps Reserve. From 2009 through 2023, Plaintiff was a tax resident, voter, and eventual homeowner in California, including when Defendants accessed, copied, and disseminated his data and conducted the investigation described below, while he worked and resided in Australia. Plaintiff is presently domiciled in Sydney, New South Wales, Australia. At all relevant times, Plaintiff was an "employee" within the meaning of USERRA, 38 U.S.C. § 4303(3), and 31 U.S.C. § 3730(h).

11. Defendant Google LLC is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, Santa Clara County, California. Google LLC operates the Google Drive, Google Sheets, and Gmail services; controls the encryption keys and data-handling architecture for those services; made the representations to the United States government described below concerning the protection of government data; and directed the investigation and conduct complained of, including through its Office of Compliance and Integrity ("OCI") and its Mountain View-based Employee Relations, People Operations, and Legal functions.

12. Defendant Alphabet Inc. is a Delaware corporation with its principal place of business in Mountain View, Santa Clara County, California, and is the ultimate parent of Google LLC.

13. Defendant Google Australia Pty Ltd (ACN 102 417 032) is an Australian proprietary limited company with offices at Level 5, 48 Pirrama Road, Pyrmont, New South Wales, Australia, and was Plaintiff's nominal employing entity. Google Australia Pty Ltd is a subsidiary controlled by Google LLC and Alphabet Inc.

14. At all relevant times, Defendants operated as an integrated enterprise and as joint employers of Plaintiff, and each Defendant acted as the agent of the others and within the course and scope of that agency, with the knowledge, authorization, and ratification of the others. Because Google LLC and Alphabet Inc. control the entity that nominally employed Plaintiff, any denial of a benefit of employment, or other adverse action, by Google Australia Pty Ltd is, pursuant to 38 U.S.C. § 4319(a), presumed to be the act of the controlling employer for purposes of USERRA.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Marine Corps Service and California Domicile

15. Before joining Google, Plaintiff had already served in the United States Marine Corps for approximately ten years, first as an enlisted service-member and then as a commissioned officer. His service included two deployments. In 2012, Plaintiff transitioned from active-duty service to the Reserve, under which he was required to perform approximately one month of reserve duty each year. Plaintiff remains a Lieutenant Colonel in the United States Marine Corps Reserve and, as a reservist, is compensated on a part-time basis for his service.

16. Plaintiff moved to California in February 2009, resided in San Diego, and was stationed at Camp Pendleton, California, from which he deployed to Afghanistan. Although Plaintiff relocated to New York in 2012 to pursue a graduate business degree, and thereafter resided abroad

in connection with his Google employment, he retained sole United States Citizenship and a California homebase. Plaintiff owned a home in Oceanside, California; he was a registered California voter; and he continued to vote in California and to pay California income tax, and his Marine Corps Leave and Earnings Statement reflected California withholding, through at least September 2023—that is, throughout the period during which Defendants accessed his data, conducted the investigation described below, and terminated Plaintiff after he engaged in the protected activity alleged herein. Plaintiff is presently domiciled in Sydney, New South Wales, Australia.

**B. Plaintiff's Employment with Google and His Uniformed-Service Obligations**

17. Plaintiff was recruited by the Google Student Veterans Summit Team in June 2012. Google offered him employment as an intern on October 10, 2013, and as a full-time employee on May 6, 2014, in the role of Strategy and Operations Manager. Most recently, Plaintiff held the position of Commercial Strategy Consultant for Platforms, AUNZ, KR. Plaintiff's nominal employing entity was Google Australia Pty Ltd, and his employment was controlled and directed by Google LLC and Alphabet Inc.

18. In every ordinary evaluation period, Plaintiff was assessed as having "exceeded" or "strongly exceeded" expectations. Over ten years, he took only ten days of sick leave. Throughout his employment, Plaintiff continued to perform his reserve duties, and Defendants were aware of his military status and obligations.

**C. Google's Discrimination Against Plaintiff Because of His Uniformed Service**

19. Google LLC maintained a policy under which reservists it employed in the United States were paid for their reserve duty for up to thirty days per year. Because Plaintiff was employed through Google Australia Pty Ltd rather than by Google LLC directly, Defendants denied Plaintiff

that paid benefit and instead required him to take unpaid time off to perform his reserve duties. Defendants later changed the policy so that reservists could perform reserve duty in their country of origin regardless of which Google entity employed them.

20. Defendants also denied Plaintiff positions and promotions, limiting him to roles requiring only four days of work per week so that he could continue to perform his reserve duties.

21. At the same time, Defendants sought to exploit Plaintiff's military position when it advantaged them. Google personnel, up to and including Vice Presidents across Sales, Global Affairs and Public Policy, the Google News Initiative, Mandiant (a cybersecurity provider), and Google Cloud, repeatedly sought to leverage the knowledge, experience, and contacts Plaintiff had obtained through his military service, including with respect to meetings with military officers. Google even offered Plaintiff a bonus if he could demonstrate how he had used the security clearance he obtained through his military service to promote Google's GPS and Mandiant cybersecurity businesses.

**D. Plaintiff's Personal Account and Sensitive Materials**

22. At all relevant times, Plaintiff maintained consumer Google Drive accounts, separate from his Google corporate account. Plaintiff relied upon Google's representations that information maintained on these drives was safe from a data privacy perspective, including its representations to the Department of Defense that formed the basis for Google Drive's Impact Level Four data security certification. This information included Controlled Unclassified Information, sensitive government data that is not officially classified but still requires special protection, standard rules, and controlled sharing.

**E. The August 1, 2023 Interrogation and Defendants' Unexplained Possession of Plaintiff's Data**

23. On August 1, 2023, while traveling to Singapore on Google business, Plaintiff was contacted by a secondee working on behalf of OCI and summoned to a meeting in the Singapore office. He was given no agenda, no notice of any allegations, and no opportunity to prepare, for a meeting that took place hours later. The subject of the investigation seemed to be Plaintiff's reserve service and outside nonprofit work. Plaintiff had performed the same reserve service and outside nonprofit activities without objection for many years. The only thing that had changed was that it was Plaintiff's first business trip to Singapore—a destination to which he had traveled for Google many times over the years—after he had begun logging his reserve time in the system Defendants required him to use.

24. The interview was conducted by two individuals, neither of whom Plaintiff believes to be a United States or Australian national. These representatives then produced documents pertaining to Plaintiff's military work.

25. The documents Defendants produced included sensitive contents Plaintiff had saved only to his private consumer Google accounts and had not shared with any Google corporate account or personnel, including an agenda for a meeting with senior Australian officers and United States government officials (the "Agenda").

26. Defendants have never explained how they obtained the Agenda and, notwithstanding repeated requests, have never confirmed that it has been expunged from their systems. On or about August 4, 2023, Andrew Price, the Director of Google's Office of Compliance and Integrity, suggested that documents obtained in the search could have come from a "bug."

**F. Defendants' Access Architecture Representations, and California-Based Decision-Making**

27. In connection with its United States Department of Defense Impact Level 4 (IL4) authorization for Google Workspace, Google publicly represented that customer administrators could geographically limit support actions to "U.S. Persons." Plaintiff is informed and believes, and on that basis alleges, that Defendants' rendering of sensitive files accessible to Google personnel without regard to nationality, contrary to the assurance that representation conveyed, and that Defendants' handling of Plaintiff's data was inconsistent with the protections Google represented to the United States government it would provide for controlled government data. Because Plaintiff had been questioned about his military service by non-U.S. persons in a foreign country, he incurred mandatory counterintelligence reporting obligations.

28. The individuals with decision-making authority over the investigation, and over the data-handling practices at issue, were located in California and directed the conduct from California. Andrew Price, the Director of Google's Office of Compliance and Integrity, is based in Mountain View, California. Google's Chief Compliance Officer, and the personnel in the reporting chain above the Singapore-based investigators, are likewise based in Mountain View, California.

**G. Plaintiff's Protected Whistleblowing**

29. Plaintiff recognized that Defendants' obtaining and disseminating of sensitive military documents, rendering United States government data accessible to non-U.S. persons contrary to Google's representations, implicated fraud on the United States government and grave national-security concerns. Plaintiff reasonably believed that Defendants' conduct, including the falsity of Google's representations concerning the protection of United States government data, constituted violations of the False Claims Act.

30. Plaintiff engaged in protected activity, in furtherance of a False Claims Act action and in an effort to stop one or more violations of the Act, by reporting these matters both internally and externally. Internally, Plaintiff escalated his concerns to Mountain View-based executives beginning shortly after August 3, 2023, and to other Google personnel thereafter, and informed John Santeler, the Head of Business Ethics and Integrity for APAC, that Plaintiff was obligated under executive orders and directives to report that he had been questioned about his military activity by non-U.S. or non-allied personnel inside a foreign country, and that he could no longer be confident how Google shared, produced, or partitioned files. Externally, beginning on or about August 7, 2023, Plaintiff reported these events to the United States Marine Attaché, the Australian Defence Force, the Naval Criminal Investigative Service, and members of the United States and Australian legislatures, in accordance with applicable whistleblower frameworks. Defendants knew that Plaintiff had engaged in this protected activity.

**H. Google's Retaliation**

31. On August 4, 2023, Plaintiff requested a meeting to address the first investigation. John Santeler attended (unannounced). When Plaintiff asked to be told the universe of documents Defendants held and how they had obtained materials that Plaintiff never shared with Google corporate accounts, workspaces, or individuals, Santeler told him "this is an investigation into your misconduct" and that "it is not your role to question this investigation." Defendants never produced the universe of documents.

32. Defendants asserted that the investigation was prompted by concerns about Plaintiff's "outside work activities," and took the position that the investigation had nothing to do with Plaintiff's military service. In fact, Plaintiff had performed the same "outside work activities," including his nonprofit work, for approximately seven years, and his reserve service throughout

his employment, without objection; the only documents Defendants produced pertained to his military work; and Defendants' stated concern was that Plaintiff had used Google resources to advance his military reserve activities. The investigation in fact targeted Plaintiff's uniformed service, and Defendants' stated basis was pretextual.

33. On September 30, 2023, Plaintiff began documenting the procedural irregularities and security concerns described above. On October 3, 2023, Plaintiff sent those concerns to Andrew Price.

34. On October 3, 2023, the same day as Plaintiff's complaint to Mr. Price, Google Employee Relations notified Plaintiff that he was now the subject of a second investigation, relating to concerns that he had engaged in "workplace misconduct, such as harassment, discrimination and retaliation." That same day, Plaintiff sent his direct supervisor a message stating, "I don't know how much longer I can do this." The temporal proximity of the second investigation to Plaintiff's complaints, and the fact that Mr. Santeler was placed in a position overseeing the first investigation rather than being investigated himself, evidence the retaliatory nature of the second investigation.

35. Among the conduct Defendants characterized as "harassment" in the second investigation was Plaintiff's having asked the investigators about their national status. Namely, Plaintiff's protected objection to the disclosure of his military information to non-U.S. persons was itself treated as the misconduct for which Defendants investigated him. Neither the first nor the second investigation resulted in any finding of misconduct against Plaintiff.

36. Plaintiff requested that Defendants provide accommodations during their purported investigations, as their chosen methods, along with intrusions upon Plaintiff's privacy, resulted in an exacerbation of his service-connected post-traumatic stress disorder. No such accommodations were made.

37. On October 31, 2023, after Plaintiff attempted to escalate his complaints to senior executives, Defendants placed Plaintiff on "administrative leave." That measure excluded Plaintiff from Google's campus and systems, disconnected his Google mobile telephone, suspended his access card, and required him to refrain from attending work or contacting colleagues. The measure was punitive and was imposed because of Plaintiff's protected activity and his uniformed service.

38. In or about March 2024, shortly after Plaintiff, through counsel, formally asserted his legal claims to Google's Chief Legal Officer in Mountain View, California, Defendants terminated Plaintiff's employment. Defendants characterized the termination as part of a broad layoff affecting approximately a dozen employees. Plaintiff is informed and believes, and on that basis alleges, that the decision to include Plaintiff in that layoff was made by Google personnel at Google's Mountain View, California headquarters, and that, due to the proximity of the layoff to Defendants' investigations, Plaintiff was selected because of his protected activity and his uniformed service.

**I. The Continuing Intrusions and Google's Ongoing Retention and Use of Plaintiff's Data**

39. Beginning after Google's investigation commenced, and continuing thereafter, Plaintiff observed a marked increase in successful and unsuccessful unauthorized access attempts directed at his home network, from an unidentified source. On August 21 and 22, 2023, Plaintiff reported this activity to Google, including to Andrew Price and to Google's Threat Analysis Group, and asked for assistance; he received only a referral to a self-service resource page and an employee assistance program. On or about August 24, 2023, Plaintiff notified Google that he intended to wipe and rebuild his personal telephone to mitigate any threat, in the absence of meaningful investigation by Google's Threat Analysis Group. Google confirmed it had no

concerns and did not wish to investigate. Plaintiff thereafter incurred the cost and burden of examining, wiping, and rebuilding multiple personal devices and hardening his residential network.

40. To date, Defendants have refused to identify, expunge, or confirm the expungement of the copies of Plaintiff's sensitive data they hold. Defendants' retention of Plaintiff's private data and failure to confirm the extent of unauthorized access is continuing and ongoing as of the date of this Complaint.

41. Although Plaintiff has, to the extent possible, ceased using Google's products, he remains within Google's ecosystem and cannot fully disentangle from it: because of single sign-on and more than a decade of reliance on Google's services, Plaintiff continues to use Google services, including Gmail and Google Voice, continues to receive services through numerous linked subscriptions, and continues to be required to use Google services for work. Plaintiff's data therefore remains within, and accessible to, Google's systems.

## FIRST CAUSE OF ACTION
## Discrimination and Retaliation in Violation of USERRA

**(38 U.S.C. § 4311; 38 U.S.C. § 4323)**

42. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43. USERRA prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of that person's membership or service in a uniformed service. 38 U.S.C. § 4311(a). USERRA separately prohibits an employer from discriminating or taking any adverse employment action against a person because that person has taken action to enforce a protection afforded under USERRA, has

exercised a right provided for under USERRA, or has assisted or otherwise participated in a USERRA investigation or proceeding. 38 U.S.C. § 4311(b).

44. At all relevant times, Plaintiff was a member of a uniformed service. Defendants denied Plaintiff benefits of employment on the basis of his service, including by denying him the paid reserve-duty benefit that Google LLC afforded to the reservists it employed in the United States, and by denying him positions and promotions in order to accommodate the reserve obligations his service required. Defendants further subjected Plaintiff to an investigation that in fact targeted him because of his uniformed service, and to the adverse actions alleged above, including punitive administrative leave, denial of his annual bonus, and termination of his employment.

45. Plaintiff's membership and service in a uniformed service, and his exercise of rights under USERRA, were a motivating factor in Defendants' denial of benefits and promotions and in Defendants' other adverse actions. 38 U.S.C. § 4311(c). Pursuant to 38 U.S.C. § 4319(a), the acts of Google Australia Pty Ltd in violation of USERRA are "presumed" to be the acts of the controlling Defendants.

46. Defendants' violation of USERRA was willful within the meaning of 38 U.S.C. § 4323(d)(1)(C). As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages, salary, bonus, benefits, promotions, career opportunities, and other damages, in an amount to be proven at trial. Plaintiff is entitled to the relief provided by 38 U.S.C. § 4323(d), including compensation for lost wages and benefits, liquidated damages, and equitable relief including reinstatement, together with reasonable attorney's fees, expert witness fees, and litigation expenses under 38 U.S.C. § 4323(h)(2).

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of the False Claims Act**

**(31 U.S.C. § 3730(h))**

47. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

48. The False Claims Act protects an employee from being discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the Act, or in other efforts to stop one or more violations of the Act. 31 U.S.C. § 3730(h)(1).

49. Plaintiff engaged in protected activity by investigating, reporting internally, objecting to, and reporting externally conduct he reasonably believed constituted a violation of the False Claims Act, including Google's false representations to the United States government concerning the protection of controlled government data and Google's rendering of such data accessible to non-U.S. persons, as alleged above. He thereby acted in furtherance of a False Claims Act action and in an effort to stop one or more violations of the Act.

50. Because of his protected activity, Defendants discriminated against Plaintiff in the terms and conditions of his employment, including by subjecting him to a second, pretextual investigation, placing him on punitive administrative leave, denying him his annual bonus, and terminating his employment.

51. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages. Pursuant to 31 U.S.C. § 3730(h)(2), Plaintiff is entitled to all relief necessary to make him whole, including reinstatement with the same seniority status he would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for all special

damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees, as well as the value of lost shares due to Defendants' premature termination.

**THIRD CAUSE OF ACTION**
**Violation of the Comprehensive Computer Data Access and Fraud Act**

**(Cal. Penal Code § 502)**

52. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

53. California Penal Code § 502(c) prohibits, among other things: knowingly accessing and, without permission, taking, copying, or making use of any data from a computer, computer system, or computer network (§ 502(c)(2)); and knowingly and without permission accessing or causing to be accessed any computer, computer system, or computer network (§ 502(c)(7)).

54. Defendants violated § 502(c) by knowingly accessing, taking, copying, and making use of sensitive materials related to Plaintiff's military service, without permission. These materials resided only on a separate, private account under Plaintiff's control that he never connected to, shared with, or accessed from any Google corporate account or system, and that was never shared with or accessed by any other person; Defendants nonetheless obtained these materials and used them to attempt to investigate Plaintiff, without authorization and without any lawful basis. § 502(c)(1)–(3), (7).

55. Defendants' conduct was "without permission" within the meaning of § 502(c). Section 502 does not require that access be unauthorized; it is violated where a person knowingly accesses a computer and thereby takes or uses data without permission.

56. Plaintiff is the owner or lessee, within the meaning of § 502(e)(1), of the accounts, data, devices, and residential network at issue, and suffered damage and loss by reason of Defendants'

violations, including expenditures reasonably and necessarily incurred to verify whether his systems and data had been altered, damaged, or deleted, and to examine, wipe, rebuild, and harden his devices and network. Plaintiff's required use of Google products is ongoing and his exposure is ongoing. To this day, Google has not confirmed that it will delete the sensitive materials it accessed through Plaintiff.

57. Pursuant to § 502(e)(1), Plaintiff is entitled to compensatory damages and to injunctive and other equitable relief, including orders requiring Defendants to identify and permanently expunge, and certify the expungement of, every copy of Plaintiff's data in their possession, custody, or control, to identify every person to whom that data was disclosed, and to cease making or retaining copies of files owned outside the corporate domain in override of the owner's sharing settings. Plaintiff is further entitled to reasonable attorney's fees under § 502(e)(2). Because Defendants' violations were willful and Defendants are guilty of oppression, fraud, or malice within the meaning of Civil Code § 3294, as demonstrated by their years-long refusal to disclose the universe of documents, account for their access of Plaintiff's personal information, or expunge Plaintiff's data, Plaintiff is entitled to exemplary or punitive damages under § 502(e)(4).

**FOURTH CAUSE OF ACTION**
**Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)**

58. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

59. Defendants' conduct constitutes unlawful and unfair business acts and practices within the meaning of California Business and Professions Code § 17200.

60. Defendants' conduct is "unlawful" because it violates, among other laws, USERRA (38 U.S.C. § 4311), the False Claims Act (31 U.S.C. § 3730(h)), the Comprehensive Computer Data

Access and Fraud Act (Cal. Penal Code § 502), and Plaintiff's rights under the California Constitutional right to privacy and California common law protection against intrusion upon seclusion, each of which independently serves as a predicate for liability under the UCL. Defendants' conduct is "unfair" because it offends established public policy and because the harm it causes to Plaintiff and the public outweighs any purported justification; the injury is substantial, is not outweighed by any countervailing benefit, and is not one that Plaintiff reasonably could have avoided.

61. As a direct result of Defendants' unlawful and unfair business practices, Plaintiff has suffered injury in fact and has lost money or property, including expenditures incurred to investigate, verify, and remediate Defendants' unauthorized access to his data and devices.

62. Pursuant to Business and Professions Code §§ 17203 and 17204, Plaintiff is entitled to injunctive relief enjoining Defendants from continuing their unlawful and unfair business practices, including their continued retention and use of Plaintiff's private data and their representations that servicemembers' data is secure when stored on Google Drive.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For all lost wages, salary, bonus, benefits, and other compensation, according to proof;

B. For liquidated damages under USERRA, 38 U.S.C. § 4323(d)(1)(C);

C. For two times the amount of back pay, plus interest on the back pay, under the False Claims Act, 31 U.S.C. § 3730(h)(2);

D. For compensatory and special damages, including damages for expenditures reasonably and necessarily incurred to investigate, verify, and remediate

Defendants' unauthorized access under California Penal Code § 502(e)(1), according to proof;

E. For exemplary and punitive damages, including under California Penal Code § 502(e)(4) and California Civil Code § 3294;

F. For restitution under California Business and Professions Code § 17203;

G. For injunctive and other equitable relief, including reinstatement; an order requiring Defendants to identify, and permanently expunge and certify the expungement of, every copy of Plaintiff's personal data in their possession, custody, or control; an order requiring Defendants to identify every person to whom Plaintiff's data was disclosed; and an order restraining Defendants from continuing to access, copy, retain, or disseminate Plaintiff's personal data and from continuing the alleged unlawful and unfair business practices of representing that servicemembers' data is secure when stored on Google Drive, pursuant to California Penal Code § 502(e)(1) and California Business and Professions Code § 17203;

H. For prejudgment and post-judgment interest as allowed by law;

I. For reasonable attorney's fees, expert witness fees, and costs of suit, including under 38 U.S.C. § 4323(h)(2), 31 U.S.C. § 3730(h)(2), and California Penal Code § 502(e)(2); and

J. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: August 3, 2026
Respectfully submitted,

KAISEY LAW PC

By: ______/s/ Lina Kaisey_______
Lina Kaisey (SBN 314322)
Attorney for Plaintiff Douglas Abdiel